IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BENCHMARK INSURANCE COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 25-cv-00811-LKG |
| TOTAL REMODELING CONTRACTOR LLC, | ) Dated: February 6, 2026 |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

In this insurance matter, the Plaintiff, Benchmark Insurance Company ("Benchmark") seeks to rescind a policy of insurance which includes workers' compensation and employer's liability coverage, that it insured to the Defendant, Total Remodeling Contractor LLC ("TRC"). *See generally* ECF No. 1.  On July 25, 2025, Benchmark filed a motion for default judgment against TRC, pursuant to Fed. R. Civ. P. 55(b).  ECF No. 18.  TRC has not responded to the motion or otherwise defended this case; no hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2025).  For the reasons that follow, it is **ORDERED** that Benchmark's motion for default judgment is hereby **GRANTED**.

**II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

**A.    Factual Background**

In this insurance matter, Benchmark seeks to rescind insurance policy TWMD0000831900, effective March 13, 2024, to March 13, 2025 (the "Policy"), upon the grounds that TRC made material misrepresentations in its application for the insurance policy. *See generally* ECF No. 1.  In the complaint, Benchmark asserts a claim of recission against TRC

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint and the Plaintiff's motion for default judgment and memorandum in support thereof. ECF Nos. 1, 18 and 18-1.

1

pursuant to the Fed. R. Civ. P. 57 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. *Id.* at ¶ 45. As relief, Benchmark seeks a declaratory judgment that: (1) the Policy is adjudged rescinded; (2) Benchmark holds no duty under the Policy to provide workers' compensation benefits; and (3) Benchmark is entitled to reimbursement for all costs incurred under the Policy. *Id.* at Prayer for Relief.

The Parties

Plaintiff Benchmark Insurance Company is a corporation organized under the laws of Kansas, with its principal place of business located in California. *Id.* at ¶ 1.

Defendant Total Remodeling Contractor LLC is a limited liability company organized under the laws of Maryland, with its principal place of business in Montgomery County, Maryland. TRC's sole member is its resident agent and principal, Juan Carlos Manzanares. *Id.* at ¶ 2.

TRC's Application For The Issuance Of The Policy

As background, on March 13, 2024, FrankCrum General Agency, Inc ("FCGA"), a managing general agent for Benchmark issued a Policy to TRC which included workers' compensation and employer's liability coverage. *Id.* at 3. The Policy was obtained through a brokering agent, Ikon Insurance, LLC ("Ikon"). *Id.*

The issuance of the Policy included an application process, which required TRC to: (1) provide a business description (*Id.* at ¶ 8); (2) include class, codes and payroll information (*Id.* at ¶ 9); (3) a classification of operations (*Id.* at ¶ 10); and (4) answer supplemental information and industry underwriting questions (*Id.* at ¶ 11) (the "Application"). The Application also includes the following language:

> This application does not bind the applicant nor the company to complete the insurance, but it is agreed that the information contained herein. ARE MATERIAL REPRESENTATIONS BY THE APPLICANT, and shall be the basis of the contract should a policy be issued.

*Id.* at ¶ 12; ECF No. 1-5 at 4.

TRC described its business as "flooring, painting, carpentry and interior drywall" in the Application. ECF No. 1 at ¶ 8. But, TRC did not include roofing in its class, codes,

and payroll information.  *Id.*  In addition, TRC did not include coverage for roofing work.  *Id.* at ¶ 10.  TRC also states in the Application that it engages in remodeling work performed in the interior of premises.  *Id.* at ¶ 11.   Lastly, TRC specifically noted that its employees do not have any roof exposure and do not use stilts.  *Id.* at ¶ 11.

On March 13, 2024, TRC and Ikon signed the Application, which includes the following language:

> It is understood that the Brokering Agent is submitting the application to the insurer on my behalf and is acting as my agent and is not an agent of the insurer. Therefore, the insurer and/or its appointed representative is not bound by any representation made by the Brokering Agent unless acknowledged by the insurer or its representative.

*Id.* at ¶ 15; ECF No. 1-5 at 5.  Benchmark alleges in this case that it does not underwrite roofing work.  ECF No. 1 at ¶ 19.  Benchmark also alleges that, if TRC had indicated any roofing work in the Application, Benchmark would have been prompted to review the Application and to reject the Application.  *Id.* at ¶ 20.

### TRC's Employee Workers' Compensation Claim

On January 6, 2025, the Maryland Workers' Compensation Commission (the "Commission") received a claim for workers' compensation from Erick Medina-Montoya ("Mr. Medina-Montoya")—an employee of TRC at the time—which the Commission assigned a claim number.  On January 7, 2025, Benchmark was sent a Notice of Claim.  *Id.* at ¶¶ 22-24

In the Notice of Claim, Mr. Medina-Montoya claims that he was injured when he slipped and fell off a roof while working on October 13, 2024.  *Id.* at ¶¶ 25-26.  Benchmark asserts upon information and belief that Mr. Medina-Montoya is a roof specialist, who was injured while clearing a roof at a height of three stories, when he slipped on asphalt, falling from the roof.  *Id.* at ¶ 27.  Benchmark also asserts that Mr. Medina-Montoya's job classification for the purposes of insurance coverage was noted as carpentry interior work.  *Id.* at ¶ 28.  And so, Benchmark contends that TRC failed to disclose the scope of work in the Application to include roofing work.  *Id.* at ¶¶ 29-32.

### Benchmark's Allegations

3

Benchmark alleges that TRC made multiple material misrepresentations regarding the scope of its services involving roofing work in the Application, which Benchmark relied upon in determining whether to issue a Policy. *Id.* at ¶¶ 34-45. Specifically, Benchmark alleges that TRC materially misrepresented its scope of services, because: (1) the description of the business in the Application does not include roofing; (2) roofing is not included in any classification, code, or payroll information; (3) TRC misrepresented its scope of service by not requesting coverage for roofing; (4) TRC stated that it does interior remodeling work; and (5) TRC stated that its employees do not do have any roof exposure. *Id.* at ¶¶ 8-11. Given this, Benchmark contends that if it had been aware of TRC's roofing work, it would have denied the Application. *Id.* at ¶¶ 19-21. And so, Benchmark seeks to rescind the Policy. *Id.* at Prayer for Relief.

### B. Procedural History

Benchmark commenced this declaratory judgment action on March 12, 2025. ECF No. 1.

The summons and complaint were properly served on TRC on March 21, 2025. ECF Nos. 9 and 9-1. But TRC neither answered, nor otherwise responded to, the complaint. And so, Benchmark filed a motion for Clerk's entry of default on May 22, 2025. ECF No. 13.

On May 29, 2025, the Clerk of Court entered an Order of Default against TRC. ECF No. 14. On July 25, 2025, Benchmark filed the pending motion for default judgment, pursuant to Fed. R. Civ. P. 55(b)(2). ECF No. 18. On July 25, 2025, Benchmark filed a sworn affidavit from the Chief Underwriting Office of FCGA and its managing general agent, Scott Mackey regarding the company's procedures for insurance policy applications. ECF No. 18-2.

### III. LEGAL STANDARDS

### A. Default Judgment and Declaratory Relief

Federal Rule of Civil Procedure 55 governs default judgments entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Court may enter default judgment at the plaintiff's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). Although courts maintain a "strong policy that cases be decided on the[ir] merits," *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment is

appropriate when the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

In deciding whether to grant a default judgment, the Court takes as true the well-pled factual allegations of the complaint, other than those pertaining to damages. *See, e.g.*, *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). In this regard, the Court applies the pleading standards established in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in this context. *See Balt. Line Handling Co.*, 771 F. Supp. 2d at 544. And so, where a petition avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," the Court will not enter default judgment. *Id.* at 544-45 ("The record lacks any specific allegations of facts that 'show' why those conclusions are warranted.").

Upon a finding that the plaintiff has established liability, the Court must independently determine the appropriate amount of damages. *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 494 (D. Md. 2010). The Court must do so "because 'an allegation relating to the amount of damages, is not deemed admitted based on a defendant's failure to deny in a required responsive pleading.'" *Bar Clancy v. Skyline Grill, LLC*, No. ELH-12-1598, 2012 WL 5409733, at *3 (D. Md. Nov. 5, 2012) (quoting *Hartford Fin. Servs. Grp. V. Carl J. Meil, Jr., Inc.*, No. WDQ-10-2720, 2011 WL 1743177, at *7 (D. Md. May 5, 2011)), *report and recommendation adopted*, No. ELH-12-1598, 2013 WL 625344 (D. Md. Feb. 19, 2013).

In addition, the United States Supreme Court and the United States Court of Appeals for the Fourth Circuit have long held that district courts are afforded discretion in determining declaratory relief. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998) ("This circuit has long recognized the discretion afforded to district courts in determining whether to render declaratory relief."); *Kline v. Hyundai Motor Am. Inc.*, 751 F. Supp. 3d 542, 564 (D. Md. 2024). "Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, '*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409,

412 (4th Cir. 2004) (emphasis in original) (quoting 28 U.S.C. § 2201(a)); *see Tate v. Am. Gen. Life Ins. Co.*, 627 F. Supp. 3d 480, 497 (D. Md. 2022). The Fourth Circuit has observed that the court must consider three factors when determining whether a declaratory judgment under the Declaratory Judgment Act is appropriate:

> (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal citation and quotation marks omitted). And so, "[a] declaratory judgment action is appropriate when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (internal citation and quotation marks omitted).

### B.   Material Misrepresentation And Recission

Under Maryland law, the Court may declare an insurance policy void *ab initio* if it finds that the insurer issued the policy by relying on a material misrepresentation in the application for that policy. *Mut. Benefit Ins. Co. v. R. Gates Constr. Co.*, 503 F. Supp. 3d 344, 357 (D. Md. 2020) (quoting *Dominant Invs. 113, LLC v. U.S. Liab. Ins. Co.*, 247 F. Supp. 3d 696, 700-01 (D. Md. 2017)); *Encompass Home & Auto Ins. Co. v. Harris*, 93 F. Supp. 3d 424, 432 (D. Md. 2015). The Court undertakes "a two-pronged inquiry to determine whether the insurer may validly rescind the policy. First, the court must determine whether a misrepresentation occurred. Second, the court must determine whether the misrepresentation was material to the risk assumed by the insurer." *Encompass Home & Auto Ins. Co.*, 93 F.Supp.3d at 432 (internal citation and quotation marks omitted). "A material misrepresentation is one that may 'reasonably have affected the determination of the acceptability of the risk.'" *Mut. Benefit Ins. Co.*, 503 F. Supp. 3d at 358 (quoting *Jackson v. Hartford Life & Annuity Ins. Co.*, 201 F. Supp. 2d 506, 512 (D. Md. 2002)). And so, this Court has held that "an uncontested affidavit from an insurer's underwriting department that a policy would not have been issued if the insurer had known of the applicant's misrepresentation[s] is 'adequate to find materiality as a matter of law.'" *Dominant*

6

*Investments 113, LLC*, 247 F. Supp. 3d at 703 (quoting *Essex Ins. Co. v. Hoffman*, 168 F. Supp. 2d 547, 552 (D. Md. 2001)).

In addition, the Fourth Circuit has held that insurance policies "must be construed as a whole to determine the parties' intention." *Certain Underwriters at Lloyd's, London v. Cohen*, 785 F.3d 886, 890 (4th Cir. 2015) (internal citation and quotation marks omitted). And so, if the questions to which an applicant gives false answers are subject to more than one reasonable interpretation, such questions are ambiguous, and cannot give rise to a material misrepresentation. *See id*. at 891-92.

Lastly, to succeed on a claim of policy recission under Maryland law, an insurance company must show that it:

> [I]ssued a policy in reliance on a material misrepresentation in the application. Materiality is determined by considering whether, given the circumstances of the case, the information omitted could reasonably have affected the determination of the acceptability of the risk. The misrepresentation must actually have been relied on in issuing the policy or setting the premium in order for it to be material. . . . The materiality of a misrepresentation can be determined [at summary judgment] as a matter of law when the evidence is clear and convincing, or uncontradicted.

*Mut. Benefit Ins. Co. v. Lorence*, 189 F.Supp.2d 298, 302 (D. Md. 2002) (internal citation and quotation marks omitted). "Plaintiffs must also prove that they acted promptly in seeking recission after learning of 'the facts that would *justify* recission." *Charter Oak Fire Co. v. Am. Cap. Ltd.*, No. CV DKC 09-0100, 2017 WL 3315306, at *14 (D. Md. Aug. 3, 2017) (emphasis in original) (quoting *Monumental Life Ins. Co. v. U.S. Fid. & Guar. Co.*, 94 Md.App. 505, 541 (1993)), *aff'd sub nom*, *Charter Oak Fire Ins. Co. v. Am. Cap., Ltd.*, 760 F. App'x 224 (4th Cir. 2019).

**IV.   ANALYSIS**

Benchmark seeks a default judgment against TRC for failure to plead, or to otherwise defend, this matter, and a declaratory judgment that the Policy at issue in this dispute is rescinded, void *ab initio* and of no effect due to TRC's material misrepresentations in the Application. ECF No. 18 at 2-3. For the reasons that follow, it is ORDERED that Benchmark's motion for default judgment is hereby GRANTED.

### A.     Benchmark Is Entitled To A Declaratory Judgment

As an initial matter, Benchmark has shown that TRC misrepresented the nature of its work in the Application for the Policy. Under Maryland law, the Court may declare the Policy at issue in this case void *ab initio*, if it determines that Benchmark decided to issue the Policy in reliance upon a material misrepresentation in the Application. *Mut. Benefit Ins. Co. v. R. Gates Constr. Co.*, 503 F. Supp. 3d 344, 357 (D. Md. 2020) (citation omitted); *Dominant Invs. 113, LLC v. United States Liab. Ins. Co.*, 247 F. Supp. 3d 696, 700–01 (D. Md. 2017), *aff'd*, 707 F. App'x 155 (4th Cir. 2017) ("[A] court may declare an insurance policy void *ab initio* if it finds that an insurer issued a policy in reliance on a material misrepresentation in the application." (citation omitted)). To determine whether the Policy at issue here is void *ab initio*, the Court first determines whether a misrepresentation occurred and, if so, the Court next determines whether the misrepresentation was material to the risk assumed by Benchmark.[2] *Encompass Home & Auto Ins. Co. v. Harris*, 93 F. Supp.3d 424, 432 (D. Md. 2015) (internal citation and quotation marks omitted). In doing so, the Court takes as true the well-pled factual allegations in the complaint, other than those pertaining to damages. *Balt. Line Handling Co.*, 771 F. Supp. 2d at 544; *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

In this case, Benchmark has shown that TRC misrepresented and/or omitted information about the nature of its work in the Application, by failing to disclose that the company provides roof-related services. Benchmark alleges in the complaint that TRC submitted the Application for workers' compensation and employer's liability coverage, which resulted in the issuance of

---

[2] The United States Supreme Court established that when federal jurisdiction rests on diversity of citizenship, as in the current action, federal procedural law governs procedural matters, but the law of the forum state controls substantive legal issues. *Erie R.R. v. Thompkins*, 304 U.S. 64, 78 (1938). This principle also extends to the choice of law principles of the state. *Gita Sports Ltd. v. SG Sensortechnik GmbH & Co. KG*, 560 F. Supp. 2d 432, 441 (W.D.N.C. 2008). Maryland applies *lex locus contractus*, the law of the place of the making of the contract, therefore, an insurance contract is made where the policy is delivered, and the insured pays its premiums. *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013). In this instance, the policy was delivered in Maryland to TRC—a Maryland insured—and that is where the policy invoices were directed, and premiums paid. ECF No. 18-1 at 8 (citing ECF 1-3 at 1 (The mailing address is listed as 10138 Little Pond Place, Apt. 1, Montgomery Village, Maryland 20886.)). And so, Maryland law applies to the substantive claims at issue.

the Policy on March 13, 2024.  ECF No. 1 at ¶ 5.  Benchmark has submitted a copy of the Application, and Benchmark correctly observes in the complaint that TRC describes its business in the Application, as "FLOORING, PAINTING CAPRENTRY INTERIOR DRYWALL. " ECF No. 1-5 at 1.  And so, a plain reading of the Application shows that TRC presented that its services were for interior design work.  *Id*.

A careful reading of the Application also shows that TRC described its payroll information for class code as "Wallboard, Sheetrock, Drywall, Plasterboard, or Cement Board Installation-Within Buildings & Drivers."  *Id.* at 2.  But, there is no mention in the Application of roof-related work in this description.

In addition, the evidence before the Court shows that TRC denied that the company provides any roof-related work in the Application.  Notably, the Application includes questions that specifically ask whether TRC would perform roof-related work.  *Id.*  (Asking about: (1) "Max height at which employees work"; (2) "Do employees have any roof exposure?"; and (3) "Do employees use stilts?").  *Id.* at 3.  But TRC responded "No" to these questions and represented that the company did not perform roofing work.  *Id.* at 4.

Given this evidence, Benchmark has shown that TRC did not disclose that the company provides roof-related services in the Application.  And so, the Court agrees with Benchmark that the Application contains misrepresentations and/or omissions about the scope of TRC's services with regards to roof-related work.

Benchmark has also shown that the aforementioned misrepresentations and/or omissions about the scope of TRC's services were material to Benchmark's decision to issue the Policy.  This Court has held that a material misrepresentation is one that may "reasonably have affected the determination of the acceptability of the risk."  *Mut. Benefit Ins. Co. v. R. Gates Constr. Co.*, 503 F. Supp. 3d 344, 388 (D. Md. 2020) (quoting *Jackson v. Hartford Life & Annuity Ins. Co.*, 201 F. Supp. 2d 506, 512 (D. Md. 2002)).  And so, the Court has also held that "an uncontested affidavit from an insurer's underwriting department that a policy would not have been issued if the insurer had known of the applicant's misrepresentation[s] is 'adequate to find materiality as a matter of law.'"  *Dominant Investments 113, LLC*, 247 F. Supp. 3d at 703 (quoting *Essex Ins. Co. v. Hoffman*, 168 F. Supp. 2d 547, 552 (D. Md. 2001)); *see also Bryant v. Provident Life and Accident Ins. Co.*, 22 F. Supp. 2d 495, 499 (D. Md. 1998).

Here, Benchmark persuasively argues that TRC's failure to disclose its roofing work was a material misrepresentation and/or omission, because it would not have issued the Policy had it known about this work. In this regard, Scott Mackey, the Chief Underwriting Officer for FrankCrum General Agency, Inc. ("FCGA") and Benchmark's managing general agent, represents to the Court in his sworn Affidavit that Benchmark's policy is not to underwrite workers' compensation for applicants who perform roofing work, or for applicants who may have roofing risks. ECF No. 1-2 at ¶ 7. Mr. Mackey also represents to the Court that, had Ikon been properly informed of TRC's scope of work, including roof exposure, Benchmark's managing general agent would not have bound Benchmark to the Policy. *Id.* at ¶ 15.

Mr. Mackey also states that "[w]hether an applicant is engaged in roofing work or work from heights is a material issue with regard to the binding and/or issuing a policy of workers' compensation coverage." *Id.* at ¶ 18. And so, the evidence before the Court shows that, had Benchmark been aware of TRC's work at heights, including roof-related work, the Application would have been rejected. ECF No. 1 at ¶¶ 18-19; *Id.* at ¶¶ 7 and 15-19; ECF No. 1-4 at ¶ 7, 13, 15 and 17. The Court also observes that the Application provides that TRC acknowledges that "it is agreed that the information contained herein ARE MATERIAL REPRESENTATIONS BY THE APPLICANT, and shall be the basis of the contract should a policy be issued." ECF No. 1 at ¶ 12; ECF No. 1-5 at 4.

Given this, the complaint and the Application show that TRC's representations about the nature of its work were material to Benchmark's decision to issue the Policy. And so, the Court is satisfied that Benchmark has shown that the misrepresentations and/or omissions at issue in this case were material. *See, e.g.*, *Dominant Investments 113, LLC*, 247 F. Supp. 3d at 703; *Bryant*, 22 F. Supp. 2d at 499.

Lastly, Benchmark has shown that it is entitled to a declaratory judgment that the Policy is rescinded, void *ab initio* and of no effect, due to TRC's material misrepresentations and/or omissions. To rescind the Policy, Benchmark must show that it " issued a policy in reliance on a material misrepresentation in the application" and that that it took steps to rescind the Policy promptly after discovery of the material misrepresentations on the Application. *Mut. Benefit Ins. Co. v. Lorence*, 189 F.Supp.2d 298, 302 (D. Md. 2002) (internal citation and quotation marks omitted). As discussed above, the complaint and sworn Affidavit of Mr. Mackey make clear that

Benchmark relied upon TRC's representations that the company did not provide roof-related work in deciding to issue the Policy.  Benchmark also alleges that it first learned of TRC's roof-related work when it was notified of Mr. Medina-Montoya's workers' compensation claim on January 7, 2025.  ECF No. 1 at ¶ 22-24.  Benchmark commenced this action on March 12, 2025, approximately two months thereafter.  *See id.*

Given this, the Court is satisfied that Benchmark has promptly taken steps to rescind the Policy after discovery of the material misrepresentations on the Application.  And so, Benchmark has also shown that it is entitled to rescind the Policy, and that a declaratory judgment that the Policy is rescinded, void *ab initio* and of no effect is an appropriate remedy in this matter.

### B.  Benchmark Is Entitled To A Default Judgment

Having determined that Benchmark is entitled to a declaratory judgment that the Policy is rescinded, void *ab initio* and of no effect, the Court considers as a final matter whether entry of a default judgment against TRC in this matter is appropriate.  Rule 55(b) of the Federal Rules of Civil Procedure provides that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise," the Court may enter default judgment at a party's request and with notice to the defaulting party.  Fed. R. Civ. P. 55(b)(2).  The litigation history of this case makes clear that TRC has failed to plead, or to otherwise defend, in this civil action.  The summons and complaint were properly served on TRC on March 21, 2025, more than 10 months ago.  ECF No. 9 at 1.  But, to date, TRC has neither answered, nor otherwise responded to, the complaint.

Given this, Benchmark filed a motion for Clerk's entry of default on May 22, 2025, which the Clerk of the Court granted on May 29, 2025.  ECF Nos. 13 and 14.  Thereafter, Benchmark filed the pending motion for default judgment, which TRC has also failed to respond to.  ECF No. 18.  And so, the Court is satisfied that entry of a default judgment against Benchmark is warranted and appropriate in this case.  Fed. R. Civ. P. 55(b).

### V.  CONCLUSION

In light of the foregoing, it is **ORDERED** that Benchmark's motion for default judgment is hereby **GRANTED**.

11

A separate Order shall issue.

**IT IS SO ORDERED.**

                                                    s/Lydia Kay Griggsby
                                                    LYDIA KAY GRIGGSBY
                                                    United States District Judge